UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

EVARISTUS MACKEY,                :
                                 :
        Plaintiff,                :    CIVIL NO. 3:CV-06-0156
                                 :
        v.                       :    (Judge Caputo)
                                 :
FRANK STRADA[1], *et al.*,          :
                                 :
        Defendants.              :

# MEMORANDUM

On January 20, 2006, Plaintiff Evaristus Mackey, an inmate currently confined at the Victorville United States Penitentiary in Adelanto, California, commenced this *pro se* action by filing a complaint pursuant to the provisions of 28 U.S.C. § 1331. At the time of filing, Plaintiff was confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg").

Mackey names the following employees of USP Lewisburg as Defendants: Frank Strada, Associate Warden; J. Adami, Unit Manager; Chad Rice, Correctional Counselor; Tim Ranck, Correctional Counselor; Curt Rothermel, Case Manager; D. Childress, Unit Manager; Chris Henderson, Case Manager; and William Zegarski, Case Manager. He alleges that Defendants violated his constitutional rights by placing him in administrative segregation within the Special Management Unit ("SMU") at USP Lewisburg and by

---

1. In his Complaint, Plaintiff names the lead Defendant as "Estrada," and identifies him as the warden of USP Lewisburg. In their Brief in Support of their Motion to Dismiss/Motion for Summary Judgment, Defendants clarify that this Defendant is Frank Strada, Associate Warden of USP Lewisburg.

transferring him from USP Lewisburg to the United States Penitentiary in Marion, Illinois ("USP Marion").

Presently pending before the Court is a Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 19) filed on behalf of Defendants.  For the reasons set forth below, the Motion will be granted.

## BACKGROUND

Mackey filed his Complaint on January 20, 2006.  (Doc. 1.)  Because the Complaint did not comply with the Federal Rules of Civil Procedure, by Order dated February 17, 2006, he was given an opportunity to file an amended complaint.  (Doc. 9.)  On March 2, 2006, Mackey filed his Amended Complaint (Doc. 10).

By Order dated July 9, 2007, service of Mackey's Amended Complaint was directed. (Doc. 15.)  Following a request for an extension of time to answer the Amended Complaint, which was granted, on December 6, 2007, Defendants filed the instant Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 19).  On December 20, 2007, Defendants filed a supporting brief (Doc. 20) and Statement of Facts (Doc. 21).

On January 11, 2008, Mackey filed a document entitled "Response to Defendants Motion to Dismiss Or, in the Alternative, for Summary Judgment and, Plaintiff Supplement Adding Defendant Dodrill."  (Doc. 22.)  Because he did not file his opposition in conformance with Fed. R. Civ. P. 56(e) and M.D. Pa. L.R. 56.1, but instead indicated that he sought to add Dodrill as a defendant, by Order dated January 18, 2008 (Doc. 23), the Court directed Mackey to file either his opposition in conformance with the applicable rules

or a motion for leave to file an amended complaint.  Thereafter, on February 19, 2008, Mackey filed a Motion for leave to file an amended complaint to add Dodrill as a defendant. (Doc. 24.)  He also indicated that he was withdrawing his previously filed "Response" (Doc. 22).

On May 8, 2008, the Court denied Mackey's Motion for leave to file an amended complaint.  (Doc. 25.)  The Order also directed him to file his opposition to Defendants' pending Motion in accordance with the requirements of Fed. R. Civ. P. 56(e) and M.D. Pa. L.R. 56.1, as set forth in the Standing Practice Order (Doc. 5), within fifteen (15) days. Following a request for an extension of time, which was granted, on June 16, 2008, Mackey filed a Brief in Opposition to Defendants' Motion.  (Doc. 28.)  He did not file an opposing statement of facts.  On July 2, 2008, Defendants' filed a Reply Brief.  (Doc. 29.) Therefore, the Motion is ripe for disposition.

## LEGAL STANDARDS

**I.   Motion to Dismiss**

Defendants seek dismissal of Mackey's Amended Complaint (Doc. 10) on the basis that it fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants seek summary judgment and have submitted evidentiary documents outside the pleadings in support of their motion.  (*See* Doc. 20-2.)  Federal Rule of Civil Procedure 12(d) provides:

> **(d) Result of Presenting Matters Outside the Pleadings.**  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

> summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d).  The Court will not exclude the evidentiary materials accompanying Defendants' motion because Mackey was given a reasonable opportunity to present material relevant to the Motion.  (*See* Doc. 25) (May 8, 2008 Order advising Mackey that, because Defendants styled their Motion as a "Motion to Dismiss, or in the alternative, for Summary Judgment," he must oppose the Motion as required by Fed. R. Civ. P. 56(e) and M. D. Pa. L. R. 56.1.)  Accordingly, the Court will treat Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, solely as seeking summary judgment.

## II.  Summary Judgment

Summary judgment will be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Id.* at 249.  In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party.  *P.N. v. Clementon Bd. Of Educ.,* 442 F.3d 848, 852 (3d Cir. 2006).

The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury

might return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 256-57. The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, the non-moving party "may not rest upon the mere allegations or denials of the . . . pleading," but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the evidence in favor of the nonmoving party is "merely colorable or not significantly probative," summary judgment should be granted. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994) (abrogated on other grounds)).

**STATEMENT OF FACTS**

In support of their Motion for Summary Judgment, Defendants submitted a Statement of Facts (Doc. 21).  Because Mackey has failed to file an opposing statement of facts as required by M.D. Pa. L.R. 56.1, even though the Court specifically directed him to do so in its May 8, 2008 Order (Doc. 25), the following facts submitted by Defendants are deemed admitted.

The SMU at USP Lewisburg began accepting inmates in September 2002.  (Doc. 21 ¶ 1.)  Placement in the SMU is not punitive.  (*Id.* ¶ 2.)  Rather, the SMU was implemented to provide additional programming opportunities to inmates who may have been involved in or played a leadership role in a disruptive incident involving some type of gang activity.  (*Id.*)  The SMU provides inmates with a number of self study, individual, and group activities geared toward the development of behavior and values that will allow for them to function successfully in the general population of some Bureau of Prisons ("BOP") institution.  (*Id.* ¶ 3.)  The SMU program encompasses a multi-phase approach designed to teach inmates self-discipline, pro-social values, and to facilitate the participant's ability to successfully co-exist with members of other geographical, cultural, and religious backgrounds.  (*Id.* ¶ 4.)

Inmates assigned to the SMU are coded into the BOP's SENTRY system as "SMU-holdover" inmates.  (*Id.* ¶ 5.)  This code simply notes their assignment to the SMU program and differentiates them from inmates who are designated to USP Lewisburg's general

population, as well as from inmates who are housed temporarily at USP Lewisburg while they await transfer to another BOP facility.  (*Id.* ¶ 6.)

On May 17, 2004, Mackey was transferred from the United States Penitentiary in Pollock, Louisiana ("USP Pollock"), to USP Lewisburg to participate in the SMU program because he was involved in a gang-related disturbance at USP Pollock.  (*Id.* ¶ 7.)  A complete copy of the USP Pollock Special Investigative Agent's investigation was submitted with a motion to seal in Mackey's previous case before this Court, *Mackey v. Smith*, Civil No. 3:CV-04-1577.  (*Id.* ¶ 8.)  The investigation was submitted under seal because it contains information that, if released, would create a serious security concern within a prison environment.  (*Id.*)  Upon Mackey's arrival at the SMU at USP Lewisburg, he, like all other SMU active participants, was placed in SMU holdover/administrative detention status.  (*Id.* ¶ 9.)  Mackey remained in administrative detention status from May 14, 2004 until August 3, 2004.  (*Id.*)

During his time in administrative detention, Mackey received six disciplinary incident reports.  (*Id.* ¶ 10.)  These incident reports included multiple charges for Refusing a Program or Work Assignment, Refusing to Obey an Order, and Insolence and Fighting.  (*Id.*)  As a result of his multiple incident reports, the Disciplinary Hearing Officer ("DHO") sanctioned Mackey to multiple consecutive terms of disciplinary segregation.  (*Id.* ¶ 11.)  Therefore, on August 3, 2004, Mackey was removed from non-punitive administrative detention status and placed in disciplinary segregation status.  (*Id.* ¶ 12.)

Between August 2004 and December 2004, Mackey received an additional six disciplinary incident reports.  (*Id.* ¶ 13.)  The charges against him included Refusing a

Program or Work Assignment, Refusing to Obey an Order, and Destroying Government Property.  (*Id.* ¶ 14.)  Following multiple DHO hearings on these charges, Mackey was sanctioned to additional consecutive terms of disciplinary segregation.  (*Id.* ¶ 15.)

Between February 2005 and June 2005, Mackey received an additional six incident reports.  (*Id.* ¶ 17.)  The charges against him included Refusing a Program or Work Assignment, Failing to Stand Count, and a "greatest severity" level charge of Possessing a Dangerous Weapon.  (*Id.*)  The DHO sanctioned Mackey to additional consecutive terms of disciplinary segregation on these charges.  (*Id.*)

On October 3, 2005, Mackey completed his disciplinary segregation terms and was returned to SMU participation/administrative detention status.  (*Id.* ¶ 18.)  He remained in administrative detention until his transfer from USP Lewisburg to USP Marion on March 27, 2006, a period of approximately 174 days.  (*Id.* ¶ 19.)

## DISCUSSION

**I. Placement in Administrative Segregation**

    **A. Defendants Zegarski, Ranck, Adami, Henderson, Childress, Rothermel, and Rice**

Mackey alleges that Defendants Zegarski, Ranck, Adami, Henderson, Childress, Rothermel, and Rice knowingly and deliberately kept him in "administrative segregation" in the SMU in violation of 28 C.F.R. § 541.22 even though he had committed no rule infractions at USP Lewisburg.  (Doc. 10 at 2-3.)

Mackey's use of the term "administrative segregation" is unclear.  To the extent he refers to his placement in the SMU Program, the undisputed facts establish that these Defendants did not have the authority to place Mackey in the Program, but rather, he was referred for participation in the Program by the Regional Director of the BOP's Northeast Regional Office.  (*See* Doc. 20-2 at 3 ¶ 2.)  Moreover, the undisputed facts establish that placement in the SMU Program is not punitive in nature, but rather is designed to provide additional programming opportunities for inmates involved in a disruptive incident.  (*See* Doc. 21 ¶ 2.)  Therefore, Mackey's placement there does not implicate due process protections.

To the extent Mackey refers to his placement in disciplinary segregation while he was in the SMU, the relevant inquiry is whether his placement resulted in a violation of his right to due process.  The Fourteenth Amendment of the United States Constitution provides in pertinent part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists, and if so, the next step is to define what process is mandated to protect it.  *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  An inmate does not possess a liberty interest under the Due Process Clause to be classified in the general population of a prison.  *Sheehan v. Beyer*, 51 F.3d 1170, 1175 (3d Cir. 1995).  Moreover, prison conditions do not impact a protected liberty interest unless the prison's action imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest. *Id.* at 486. "The determination of what is 'atypical and significant' is based upon the range of conditions an inmate would reasonably expect to encounter." *McKeithan v. Jones*, 212 Fed. Appx. 129, 130 (3d Cir. 2007) (citing *Asquith v. Dep't. of Corrections*, 186 F.3d 407, 412 (3d Cir. 1999); *Griffin v. Vaughn*, 112, F.3d 703, 706 & n.2 (3d Cir. 1997)). Finally, an inmate placed in administrative custody pursuant to a legitimate penological reason could "be required to remain there as long as that need continues." *Griffin*, 112 F.3d at 709.

The undisputed facts establish that Mackey was placed in disciplinary segregation as a result of having been involved in no less than eighteen (18) disciplinary incidents between his arrival at the SMU on May 14, 2004 and October 3, 2005. (*See* Doc. 21 ¶¶ 10-18.) Moreover, Mackey has failed to submit any evidence that he was subjected to atypical conditions during his terms of disciplinary segregation or that his placement in disciplinary segregation was inconsistent with 28 C.F.R. § 541.22[2]. Therefore, Defendants are entitled to summary judgment on this claim.

**B.   Defendant Strada**

Mackey alleges that Defendant Strada knew that the other Defendants violated

---

2.   28 C.F.R. § 541.22 provides, in pertinent part, as follows: "[t]he Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution." 28 C.F.R. § 541.22.

his constitutional rights and did nothing to change Mackey's housing status even though he knew that Mackey's confinement in the SMU was not justified. (Doc. 10 at 4-5.) "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dallarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). However, the personal involvement requirement may be satisfied by a showing of "personal direction or of actual knowledge and acquiescence." *Id.*; *Pansy v. Preate*, 870 F. Supp. 612, 630 (M.D. Pa. 1994), *aff'd mem.*, 61 F.3d 896 (3d Cir. 1995). Allegations of participation or actual knowledge and acquiescence must be made with appropriate particularity. *Rode*, 845 F.2d at 1207 (citations omitted).

Mackey has not submitted any evidence that Defendant Strada had actual knowledge of the alleged violations of his rights by Defendants Zegarski, Ranck, Adami, Henderson, Childress, Rothermel, and Rice. Moreover, as already noted, neither Strada nor the other Defendants have the authority to place Mackey in the SMU Program; rather, he was placed there by the Regional Director of the BOP's Northeast Regional Office. (*See* Doc. 20-2 at 3 ¶ 2.) For these reasons, Defendant Strada is entitled to summary judgment on this claim.

## II.   Disciplinary Transfer

Mackey alleges that Defendant Strada violated his constitutional rights by recommending a disciplinary transfer from USP Lewisburg either to USP Marion or "ADX-(Max Security)" even though Mackey had not committed any disciplinary violation to warrant such a transfer. (Doc. 10 at 5.)

The Due Process Clause does not create an inherent liberty interest guaranteeing housing in a particular penal institution or providing protection against transfer from one institution to another. *Meachum v. Fano*, 427 U.S. 215 (1976); *Montayne v. Haymes*, 427 U.S. 236 (1976). Moreover, the discretion to transfer an inmate between prisons and to determine to which facility an inmate should be assigned rests solely with prison officials. 18 U.S.C. § 3621(b) (stating that the BOP "shall" designate the place of imprisonment and "may at any time" direct the transfer of a prisoner). Because Mackey's claim that Strada recommended that he be transferred to a different prison does not implicate due process, Strada is entitled to summary judgment on this claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 19) will be granted and judgment will be entered in favor of Defendants.


September 9, 2008               s/ A. Richard Caputo
                                A. RICHARD CAPUTO
                                United States District Judge

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVARISTUS MACKEY, | : |
| Plaintiff, | : CIVIL NO. 3:CV-06-0156 |
| v. | : (Judge Caputo) |
| FRANK STRADA, *et al.*, | : |
| Defendants. | : |

## **ORDER**

**NOW, THIS 9th DAY OF SEPTEMBER, 2008,** in accordance with the foregoing Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 19) is **GRANTED**.

2. Judgment is entered in favor of Defendants Strada, J. Adami, Rice, Ranck, Rothermel, D. Childress, Henderson, and Zegarski.

3. The Clerk of Court shall **CLOSE** this case.

4. Any appeal from this Order will be deemed frivolous, lacking in probable cause, and not taken in good faith.

                                                 s/ A. Richard Caputo
                                                 A. RICHARD CAPUTO
                                                 United States District Judge